**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**UNITED STATES OF AMERICA**
        **Plaintiff,**

    **v.**                                                     **Case No. 05-CR-46**

**ALFREDO PERALTA-ESPINOZA**
        **Defendant.**

---

### SENTENCING MEMORANDUM

Since the Supreme Court decided United States v. Booker, 125 S. Ct. 738 (2005), courts have debated whether, when sentencing defendants convicted of unlawful re-entry after deportation, they may consider the disparity resulting from the government's use of so-called "fast-track" programs in certain judicial districts but not others. Compare United States v. Galvez-Barrios, 355 F. Supp. 2d 958, 963 (E.D. Wis. 2005) (yes), and United States v. Ramirez-Ramirez, 365 F. Supp. 2d 728, 731-32 (E.D. Va. 2005) (yes), with United States v. Perez-Chavez, No. 2:05-CR-00003PGC, 2005 U.S. Dist. LEXIS 9252 (D. Utah May 16, 2005) (no). Designed to allow southwest border districts to process high volumes of cases, fast-track programs allow defendants to obtain reduced sentences if they plead guilty immediately and waive other procedural rights. See Erin T. Middleton, Fast-Track to Disparity: How Federal Sentencing Policies Along the Southwest Border Are Undermining the Sentencing Guidelines and Violating Equal Protection, 2004 UTAH L. REV. 827, 831. However, the government operates fast-track programs only in certain districts,[1]

---

[1] Although the government originally set up fast-track programs in border states such as Texas, New Mexico, Arizona and California, see Middleton, supra, at 831, it has since extended them to such venues as Idaho, Nebraska, North Dakota and the Western District

and extends no consideration to aliens unfortunate enough to be found in non-fast track districts (such as the Eastern District of Wisconsin), no matter how quickly they plead guilty. Moreover, the government opposes sentence reductions based on the disparity caused by the selective use of fast-track programs, claiming that such reductions interfere with prosecutorial discretion.

I believe that under 18 U.S.C. § 3553(a)(6), courts may reduce sentences to remedy such disparity. Nevertheless, disparity is not the only factor sentencing courts must consider. In the present case, although the disparity factor suggested a below-guideline sentence, other factors did not. Ultimately, I imposed a sentence at the low end of the advisory guideline range, and in this memorandum, I set forth my reasons for doing so.

## I. FACTS AND BACKGROUND

Defendant Alfredo Peralta-Espinoza, born in Mexico in 1967, dropped out of school after the sixth grade and began crossing the border to work as a migrant farm worker in California, returning to Mexico in the evening. In 1986 or 1987, he illegally obtained another alien's green card and used it to obtain work. In 1988, he married Reyna Perez in Mexico, and they had four children. In 1995, authorities in New Mexico arrested defendant with a shipment of marijuana he had transported from California. Defendant was convicted under the name on his fraudulent green card and sentenced to ten months in federal prison. In 1996, he was deported to Mexico.

---

of Washington. However, in FY 2003, Idaho had just 73 immigration cases, Nebraska 80, North Dakota 39 and the W.D. of Washington 37. In contrast, in FY 2003, the Southern District of Texas handled 2714 immigration cases. UNITED STATES SENTENCING COMMISSION, 2003 SOURCEBOOK OF FEDERAL SENTENCING STATISTICS.

2

In May of 2003, defendant paid a smuggler to return him to the United States and ultimately made his way to Wisconsin where his sister apparently lived. In October 2003, Wisconsin authorities arrested him for possession of cocaine with intent to distribute, and defendant was subsequently convicted and sentenced to three years in state prison. While in state custody, he came to the attention of immigration authorities and admitted that he had re-entered the country without permission after having been removed.

The government charged defendant with a violation of 8 U.S.C. § 1326, and he entered a plea of guilty. The probation office prepared a pre-sentence report, which calculated his offense level ("OL") as 17 (base OL 8, U.S.S.G. § 2L1.2(a), plus 12 based on his prior felony drug conviction, § 2L1.2(b)(1)(B), and minus 3 for acceptance of responsibility, § 3E1.1), and his criminal history category as III, producing an imprisonment range of 30-37 months. Neither party objected to the guideline calculations, but defendant asked for a below-guideline sentence based on fast-track disparity, while the government requested a guideline sentence.

## II. DISCUSSION

### A. Sentencing Principles

In imposing sentence, the court must consider the factors set forth in 18 U.S.C. § 3553(a), which include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed--
 (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
 (B) to afford adequate deterrence to criminal conduct;
 (C) to protect the public from further crimes of the defendant; and

3

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities; and

(7) the need to provide restitution to any victims of the offense.

The statute operates sequentially. It first directs the court to consider the specifics of the case before it – the nature and circumstances of the offense and the history and characteristics of the defendant. § 3553(a)(1). Next, the court must evaluate the facts of the case in light of the purposes of sentencing and the needs of the public. § 3553(a)(2). Finally, the court must translate its findings and impressions into a specific sentence, considering the kinds of sentences available, the range established by the Sentencing Commission, pertinent policy statements issued by the Commission, and any restitution due the victims of the offense. In imposing sentence, the court must also seek to avoid unwarranted sentence disparities. § 3553(a)(3)-(7); United States v. Leroy, 373 F. Supp. 2d 887, 894-95 (E.D. Wis. 2005); see also United States v. Ranum, 353 F. Supp. 2d 984, 989 (E.D. Wis. 2005). Ultimately, the statute directs the court to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing set forth in § 3553(a)(2). Galvez-Barrios, 355 F. Supp. 2d at 960.

**B. Application**

Defendant, who has never been in the United States legally, unlawfully re-entered the country after having been deported for committing a federal drug offense, leaving his

4

wife and four children behind in Mexico. Soon after re-entry, he was convicted of cocaine trafficking. I considered this an aggravating factor.[2] I further concluded that based on his record defendant presented a risk of recidivism and that he had to be confined for a substantial period of time to reflect the seriousness of the offense, promote respect for immigration law, provide just punishment, and afford adequate deterrence to criminal conduct.

As noted, the guidelines called for a term of 30-37 months, a lower range than the parties anticipated in the plea agreement and lower than is typical in the § 1326 cases I see. Because his pre-deportation drug trafficking sentence was less than 13 months, defendant received a 12 level enhancement under § 2L1.2(b)(1)(B) rather than the more typical 16 level enhancement under § 2L1.2(b)(1)(A). The illegal re-entry guideline differs from many others that are based on prior convictions in that it draws distinctions based on the length of the sentence as well as on the type of conviction. U.S.S.G. § 2L1.2(b)(1).

Defendant sought a reduction from the guideline range based on fast-track disparity, and the government objected on several grounds. First, the government claimed that the requested reduction would violate the separation of powers by intruding on its prosecutorial discretion to implement fast-track programs. I found this argument unconvincing. The government is free to bring charges or not, plea-bargain with those it has charged, and agree to any sentence it believes appropriate; a court's reduction of a defendant's sentence based on fast-track disparity violates none of these prerogatives. Such a

---

[2]Defendant stated that he believed he was allowed to return to the United States after five years in Mexico, but I found it odd in light of such belief that defendant chose to employ a smuggler to get back in.

5

reduction is a sentencing issue, and sentencing is primarily a judicial function. Prosecutors decide the charge, but courts decide the sentence. Further, sentencing courts must consider § 3553(a)(6), regardless of the prosecutor's sentencing recommendation.

Second, the government claimed that by passing the PROTECT Act, Public Law 108-21, 117 Stat. 650 (2003), which approved the use of fast-track programs, Congress determined that the disparities created by such programs were not unwarranted. I could not read so much into the PROTECT Act, which did no more than authorize the Attorney General to implement programs he was already operating. The government points to the following statement in the congressional record of the House's consideration of the Act:

> Several districts, particularly on the southwest border, have early disposition programs that allow them to process very large numbers of cases with relatively limited resources. Such programs are based on the premise that a defendant who promptly agrees to participate in such a program has saved the government significant and scarce resources that can be used in prosecuting other defendants and has demonstrated an acceptance of responsibility above and beyond what is already taken into account by the adjustments contained in 3E1.1. This section preserves the authority to grant limited departures pursuant to such programs. <u>In order to avoid unwarranted sentencing disparities within a given district</u>, any departure under this section must be pursuant to a formal program that is approved by the United States Attorney and that applies generally to a specified class of offenders. Authorization for the district to establish an early disposition program must also have been specifically conferred by the Attorney General, and may be granted only with respect to those particular classes of offenses (such as illegal reentry) whose high incidence within the district has imposed an extraordinary strain on the resources of that district as compared to other districts. . . . This section does not confer authority to depart downward on an ad hoc basis in individual cases. Moreover, because the Government's affirmative acquiescence is essential to the fair and efficient operation of an early disposition program, a departure under this section may only be granted upon a formal motion by the Government at the time of sentencing.

149 CONG. REC. H2405, H2421 (Mar. 27, 2003) (commentary to amendment offered by Rep. Feeney) (emphasis added). However, the high-lighted passage relates to <u>intra</u>-district

6

fast-track disparity, and not inter-district disparity, which is at issue in the present case.[3] Congress had no reason to consider inter-district disparity because the courts had already rejected departures based on such ground, see, e.g., United States v. Bonnet-Grullon, 212 F.3d 692 (2d Cir. 2000), and the above-quoted passage makes clear that courts were not to grant any "ad hoc" departures on this basis. But now that the guidelines are advisory, courts may impose non-guideline sentences based on the factors set forth in § 3553(a), regardless of whether they could have departed under the mandatory regime.

Finally, relying on pre-Booker cases, the government argued that any disparity resulting from fast-track programs should not be the basis for a downward departure because it does not relate to an offender's culpability or personal history. See, e.g., United States v. Armenta-Castro, 227 F.3d 1255, 1258 (10th Cir. 2000) (citing cases). This argument proved too much. If courts can only reduce sentences based on an offender's culpability or history, fast track programs themselves would be illegal. Further, the government's argument was inconsistent with Booker and § 3553(a). Guidelines are not truly advisory if judges must treat certain portions of them as being off limits. Section 3553(a) now governs federal sentencing, and the government's argument would nullify § 3553(a)(6), which requires courts to compare defendants' sentences in order to avoid unwarranted disparity. See United States v. McGee, 408 F.3d 966, 988 (7th Cir. 2005).

---

[3]Further, inasmuch as its House sponsors attached the Feeney Amendment to the popular Amber Alert bill at the last minute, and enacted it with little debate and no hearings, see, e.g., Benson B. Weintraub & Benedict P. Kuehne, The Feeney Frenzy: A Case Study in Actions and Reactions in the Politics of Sentencing, 16 FED. SENT'G REP. 114 (Dec. 2003), one should not read too much into such statements in the congressional record.

7

Thus, I would have imposed a below-guideline sentence based in part on fast-track disparity if the other § 3553(a) factors had not weighed against such a sentence. However, other factors did not favor leniency. In Galvez-Barrios, I identified what I believe is an important factor in illegal re-entry cases – the defendant's motive for returning to the United States. Motive is a relevant sentencing consideration. See Ranum, 353 F. Supp. 2d at 990. A defendant who returns to be with his wife and children, as did the defendant in Galvez-Barrios, is much more deserving of leniency than one who returns to sell drugs, as did the defendant in the present case. See 355 F. Supp. 2d at 964.[4]

In Galvez-Barrios, I discussed another factor that is relevant in the present case, the fact that the enhancements under § 2L1.2 sometimes overstate the danger resulting from the defendant's re-entry. Id. at 961-63; see also United States v. Zapata-Trevino, No. 04-2346, 2005 U.S. Dist. LEXIS 14882, at *11-16 (D.N.M. July 21, 2005). The defendant in Galvez-Barrios had just one prior conviction which, although serious, was mitigated in its specifics, and he committed no new crimes on re-entry but rather returned to support his family. Nevertheless, the guidelines subjected him to a 16 level enhancement, which, under the circumstances, was clearly excessive. Galvez-Barrios, 355 F. Supp. 2d at 961-63. In the present case, defendant's § 2L1.2(b) enhancement was only 12. Inasmuch as defendant did not return to be with his family but rather left his wife and children behind and re-offended upon re-entry, the enhancement may have understated defendant's risk to the public as well as his culpability.

---

[4] I also note that the defendant in Galvez-Barrios had acquired permanent resident status prior to his deportation, unlike the defendant in the present case, who never had any legal status in the United States.

Thus, I concluded that sentencing defendant below the guideline range would unduly depreciate the seriousness of his crime. Rather, I found that a sentence of 30 months was sufficient but not greater than necessary to satisfy the purposes of sentencing.

### III.  CONCLUSION

Therefore, I committed defendant to the custody of the Bureau of Prisons for 30 months. Defendant was serving a state sentence on the 2003 drug trafficking charge, which was determinate and set to discharge in October 2006. I had discretion whether to run the instant sentence concurrently or consecutively. 18 U.S.C. § 3584; U.S.S.G. § 5G1.3(c). Upon consideration of all of the § 3553(a) factors, and because I relied significantly on the state offense in imposing sentence, I ran the instant sentence concurrently. Other conditions of sentence appear in the judgment.

**SO ORDERED**.

Dated at Milwaukee, Wisconsin, this 16th day of August, 2005.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge